**Edgar Donald PAYNE, Jr., Respondent,**

v.

**Raymond Russell SMITH, Appellant.**

**No. 46567.**

Supreme Court of Missouri,

Division No. 2.

March 9, 1959.

Rehearing Denied April 13, 1959.

J. A. Appelquist, Mt. Vernon, Royle Ellis, Cassville, Ed V. Sweeney, Monett, for appellant.

Bert E. Strubinger, St. Louis, William C. Cockrill, Frank C. Mann, Mann, Walter, Powell, Burkart & Weathers, Springfield, for respondent.

BOHLING, Commissioner.

Edgar D. Payne sued Raymond R. Smith in the Circuit Court of Lawrence County for damages resulting from an automobile collision. Defendant filed an answer and counterclaim, asking $25,000 damages for personal injuries and $250 damages to his truck. Thereafter, the parties stipulated that the matters in controversy in plaintiff's petition had been compromised and finally settled; that plaintiff's petition be dismissed with prejudice at the costs

of defendant; and that defendant expressly reserved his counterclaim. Plaintiff's amended answer to defendant's counterclaim alleged that defendant's damages, if any, were directly caused or directly contributed to by defendant's negligence in specified respects. A change of venue was granted plaintiff to Barry County. Defendant, appellant here, predicated a recovery under the humanitarian doctrine on alleged negligence of plaintiff, respondent here, in failing to operate his automobile, after appellant was in a position of imminent peril, so as to turn or swerve and pass behind or to the south of appellant's truck while said truck was crossing the highway, and on respondent's primary negligence in failing to keep his automobile as near to the right-hand side of the highway as practicable and colliding with appellant's truck north of the center line of said highway. The jury returned a nine-juror verdict in favor of respondent and against appellant on his counterclaim. Appellant appealed from the ensuing judgment. He assigns error in giving respondent's two verdict-directing instructions; one submitting negligence of appellant as the sole cause of the collision, and the other submitting contributory negligence of appellant to defeat appellant's primary negligence case.

Respondent contends, first, appellant was contributorily negligent as a matter of law, failed to make a case against respondent on the submitted humanitarian negligence, and any error existing in said instructions was harmless (Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240[9]; Bootee v. Kansas City Pub. Serv. Co., 353 Mo. 716, 185 S.W.2d 892[1, 2]); and, second, that the questioned instructions were not erroneous. Appellant has not undertaken to answer respondent's first contention.

The accident occurred about 5:45 p. m., February 28, 1956, where U. S. Highway No. 166, an east-west highway, and a north-south county graveled road intersect, approximately 3½ miles east of Mt. Vernon, Missouri. The highways were dry and the sun was shining. Highway 166 had a 22 or 24 feet wide concrete pavement, with two traffic lanes, and was protected against traffic on the gravel road by stop signs. The gravel of the north-south road rounded out somewhat at its intersection with the pavement. There were no obstructions to the view to the west or east on No. 166 for a quarter of a mile or more from the intersection.

Appellant was eastbound on No. 166 in his 1949 Ford pickup truck, intending to proceed north on the gravel road toward his home. Westbound traffic was approaching the intersection as appellant neared it. He signaled, pulled off the pavement, and stopped 8 feet south of the pavement at or near. a mailbox at the southwest corner of the intersection. Max Walker, appellant's witness, testified he stopped 16 to 18 feet west of appellant on the shoulder; that appellant stopped at the mailbox, which he estimated to be 50 feet west of the center of the graveled road. Appellant testified he was heading "a little" southeast, made a short turn back to the highway, and stopped on the east side of the crossroad with the front of his pickup about 4 or 5 feet south of the pavement; that after an eastbound automobile passed, he looked in both directions out of the window of his cab, which was down, and saw a westbound truck and an eastbound car "more than two hundred yards" to the west; that he was in low gear, gave no signal, stepped on the gas, and started across No. 166, traveing almost straight north; that, after he traveled 35 feet, had been moving for 6 to 8 seconds, had reached a speed of 5 to 6 m. p. h., and when 9 or 10 feet of his Ford was north of and only 6 or 7 feet of the Ford was on the north pavement of No. 166 the left door of the Ford's cab was struck by another car. Appellant thought the noise of brakes attracted his attention and he saw the front of a car, about 15 feet away, come onto the north shoulder an instant before the collision. Appellant

gave no estimate of the speed of this car, testifying that he did not look to the west after he started across, did not know if the eastbound car he had seen before he started across was the car that struck his Ford, and that, until he "got across," he was watching Walker's car on the south shoulder; "I was afraid he might start up."

Appellant sustained injuries and his Ford was damaged in the collision.

Appellant's witness Walker saw appellant start from his stopped position on the shoulder and respondent's Chevrolet about 200 steps to the west. He noticed appellant, as he started to turn left, stick his head out of his left door window, which was down, and look. Appellant was moving slowly. When appellant got on the pavement, the Chevrolet was about 100 steps, 300 feet, to the west, getting closer and closer, and witness "could see there was going to be an accident." The Chevrolet moved toward the center of No. 166 and was mostly in the north lane when it passed him, about 65 feet west of the point of impact.

Ted Andrews, of the State Highway Patrol and appellant's witness, testified there were two skid marks, measuring 60 feet long, starting a little north of the center line of No. 166 and running a little northeast to the debris, dirt and glass, which were closer to the north edge than the center of the pavement, with a few pieces scattered on the north shoulder. He placed the impact a little east of the center of the crossroad and 3 or 4 feet south of the north edge of the pavement.

Respondent, his wife with him, was eastbound in the south lane of No. 166 in a 1955 two-door Chevrolet sedan, in excellent mechanical condition. He estimated his speed at 50 to 55 m. p. h. and saw the two cars parked on the south shoulder near the mailbox. When he was about 250 to 300 feet west of the Ford pickup, it started toward the pavement in a left-hand turn. Respondent sounded his horn and slackened speed to about 40 m. p. h. The Ford stopped with its left front wheel about 4 or 5 feet on the pavement, and the driver stuck his head out of the left door window and looked in respondent's direction. The cars were about 100 to 150 feet apart. Respondent, thinking the Ford stopped for him, accelerated his speed and moved to the north, placing his left wheels in the north lane, to pass the Ford. The two automobiles were about 100 feet apart when the Ford started again and proceeded in a northeasterly direction across No. 166. Respondent stated the two cars were then too close for the Chevrolet to swerve and pass south of the Ford, and he applied his foot and emergency brakes on full but could not stop. He veered to the north and the right front section of the Chevrolet struck the left cab door of the Ford just north of the center line of No. 166, while the wheels of the Chevrolet were in and the Ford was blocking the north lane. Neither car overturned.

Respondent's wife added nothing substantial to his testimony.

Appellant predicated a recovery on his counterclaim on primary negligence in that "plaintiff Edgar Payne while driving eastward and approaching and entering said intersection from the West failed to keep his said automobile upon his right hand side of the highway and as near to his right hand side of the center thereof as was then and there practicable, (if so) and that plaintiff collided against defendant's motorvehicle within said intersection when defendant Smith's vehicle was north of the center line of said highway (if so)" et cetera; and under the humanitarian doctrine on respondent's failure, after appellant was in a position of imminent peril, "to have turned or swerved his said car to the right and driven behind and South of defendant Smith's vehicle and thereby have prevented said collision and the defendant Smith being injured" et cetera.

■ Appellant's submission of his counterclaim on the stated grounds of recovery abandoned all other pleaded allegations of negligence. Quinn v. St. Louis Pub. Serv.

Co., Mo., 318 S.W.2d 316, 323[16], and cases cited.

■ Appellant makes no complaint as to the form and substance of the factual issues submitted by respondent for a finding of negligence on the part of appellant directly contributing to cause the collision involved and appellant's injuries and damages. Appellant's complaint is that said instruction is misleading and confusing and tends to make his contributory negligence the dominant issue in the case without a plain direction charging the jury that his negligence, if any, was not to be considered if the jury found the facts as stated in his humanitarian instruction. Appellant's presentation ignores the following exception by which said instruction precluded a respondent's verdict, to wit: "unless you find from the greater weight of the evidence that plaintiff saw, or by the exercise of the highest degree of care on his part could have seen the defendant Smith in a position of imminent peril in time for him thereafter and by the highest degree of care on his part to have turned his car to the right and passed to the rear or south of defendant Smith's truck." This was a plain direction to the jury that appellant's contributory negligence was not to be considered if the jury found the facts as stated in appellant's humanitarian instruction. Appellant's presentation, ignoring the quoted portion of respondent's instruction, falls short of establishing error.

■ After seeing respondent's Chevrolet 200 yards away, appellant next saw it 15 feet from the point of impact. He never estimated its speed. He did not watch respondent's approach on the through highway but watched Walker's car on the shoulder. His witness Walker could see there was going to be an accident when appellant got on the pavement and respondent was 300 feet away. We consider appellant contributorily negligent as a matter of law. Branscum v. Glaser, Mo., 234 S.W.2d 626, 627[1–3]; Folluo v. Gray, Mo.App., 256 S.W.2d 273, 276[1, 2], and cases cited.

■ Respondent contends appellant failed to make a case on the submitted humanitarian negligence. He argues appellant was not in imminent peril until after appellant's second start northwardly across the pavement, and there is no showing that respondent thereafter could have avoided the collision without injury to himself or others.

Testimony favorable to appellant on the issue was to the following effect: The only traffic at or approaching the intersection at the time was respondent's Chevrolet and appellant's Ford. Respondent's Chevrolet was in excellent mechanical condition. Appellant's Ford had cleared the south lane and the south 6 or 7 feet of the north lane of the pavement at the time of impact. It did not stop after starting from 4 or 5 feet south of the pavement. It traveled 35 feet in 6 to 8 seconds and reached a speed of 5 to 6 m. p. h. Respondent had slackened his speed from 50 m. p. h. to 40 m. p. h. when appellant, 4 to 5 feet south of the pavement, started to cross the pavement. Witness Walker put respondent's car 300 feet to the west when the front of appellant's truck was crossing the pavement, and he thought there would be an accident. The jury was not required to find respondent was only 100 feet away when appellant started to cross the pavement. On cross-examination respondent stated he could have stopped had he continued to apply his brakes when he slowed to 40 m. p. h.; he did not know whether he accelerated his speed after reaching 40 m. p. h.; that it was "just a matter of wrong guessing" what appellant was going to do, and admitted he probably stated in his deposition that if he had remained in the south lane the collision would not have occurred.

■ Formal proof is not required that present day automobiles in good mechanical condition respond quickly and accurately to the driver's turn of the steering wheel. Brown v. Callicotte, Mo., 73 S.W.2d 190, 193[1]; Perry v. Dever, Mo., 303 S.W.2d 1, 7[13].

We conclude there was testimony to sustain appellant's humanitarian submission.

■ The material portions of the sole cause instruction predicated a respondent's verdict upon findings by the jury "that the automobile being operated by" appellant "in a generally easterly direction on Highway 166 made a left hand turn into and across his right hand or the south lane of said highway directly in the path of the eastbound automobile driven by" respondent, and a further finding "that the collision between the vehicle driven by" appellant "and the one driven by" respondent "was directly and solely caused by the act of said" appellant "in making a left hand turn into the south lane of said highway," and a further finding that said collision was not caused by any negligent act of the respondent submitted in any of the instructions in the case.

Respondent suggests in his argument the phrase "directly in the path of" may be considered as disproving any humanitarian negligence on the part of respondent. No authority is cited, and the phrase is insufficient to serve as a converse humanitarian submission.

Respondent's argument is "that appellant's truck moved from the south shoulder onto the pavement and there stopped with its left front wheel 4 or 5 feet north of the south edge of the pavement, from which position appellant stuck his head out of the window and looked toward respondent, at which time respondent was within 100 to 150 feet of appellant"; that the collision did not occur there and appellant was not then in a position of imminent peril; and that appellant "moved from that place directly into the path of respondent's automobile when approximately 100 feet from it."

■ The instruction does not hypothesize the facts respondent now advances to justify it. A sole cause instruction should hypothesize sufficient facts to authorize a finding by the jury that the negligence submitted establishes the sole cause for plaintiff's damages, as well as negativing (as does respondent's instruction) defendant's humanitarian negligence submitted by plaintiff. Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, 64[7]; Johnson v. Cox, Mo., 262 S.W.2d 13, 15[5]; Klecka v. Gropp, Mo., 278 S.W.2d 790, 795, and cases cited in the Johnson and Klecka cases; Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, 747[5, 6]. It required at least some of the facts mentioned in respondent's brief in addition to "directly in the path of the eastbound automobile driven by" respondent for a factual submission upon which to base a finding that appellant's acts constituted the sole negligence instead of negligence concurring with respondent's negligence occasioning the collision. The instruction did not require a finding that appellant turned so closely in time or distance directly in the path of respondent's automobile as to create a hazardous situation or so as to prevent respondent from avoiding the collision under appellant's humanitarian submission.

In Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742, 745 (instruction No. 7), defendant's evidence established that a small boy, plaintiff, ran around a parked automobile and against the rear wheel of defendant's forward moving truck. A submission that the boy "walked or ran against the side of the truck * * near the left rear fender" was, in the circumstances, considered sufficient to show a sole cause situation. In Steffen v. Ritter, Mo., 214 S.W.2d 28, 30, the instruction submitted that decedent was standing in a position of safety and, while defendant's truck was in the act of passing, moved from his position of safety into the left side of defendant's truck. We have read the above and other cases cited by respondent, and the approved sole cause instructions required findings of more than à movement of the plaintiff directly into the path of defendant's automobile for predicating a sole cause situation. See Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, 567 (instruction K),

571[18, 19]; Jants v. St. Louis Pub. Serv. Co., 356 Mo. 985, 204 S.W.2d 698, 701 [1–6]; Parmley v. Henks, Mo., 285 S.W. 2d 710, 713[5–7].

■ The verdict was for the right party on respondent's primary negligence and no error appears in connection therewith. Section 512.160, subd. 3 RSMo 1949, V.A. M.S. For the error in giving respondent's sole cause instruction, the judgment is reversed and the cause is remanded for new trial on the issue of respondent's negligence under the humanitarian doctrine.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.